# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MICHAEL GRIFFIN,

    Plaintiff,

v.

MEDTRONIC, INC.,
MEDTRONIC USA, INC., and
MEDTRONIC SOFAMOR DANEK USA,
INC.,

    Defendants.

No. 17 CV 927

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Griffin was diagnosed with degenerative joint disease of the cervical spine. His doctor implanted into his neck a medical device designed, manufactured, and distributed by defendants Medtronic, Inc., Medtronic USA, Inc., and Medtronic Sofamor Danek USA, Inc. He later had it removed after experiencing severe pain, believing the implant to be the cause. Griffin filed this lawsuit alleging claims based on theories of negligence, strict liability, and warranty. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted.

## I. Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but need not accept legal conclusions

or conclusory allegations. *Id.* at 678–79. With a 12(b)(6) motion, a court may consider only allegations in the complaint, documents attached to the complaint, and documents that are both referred to in the complaint and central to its claims. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

## II. Background

To treat his degenerative spinal condition, Griffin underwent a procedure to implant spinal rods and screws into his neck. [13] ¶¶ 8–9.[1] After spending three days in the hospital, Griffin was given a walker and went home. [13] ¶ 11. But he had difficulty walking and experienced more pain after his procedure than he did before. [13] ¶ 13. A few weeks later, Griffin's doctor diagnosed him with a probable fracture of his vertebrae, and Griffin tried physical therapy for the next six months. [13] ¶¶ 15, 17. When his pain did not subside, Griffin got a second opinion, and about eight months after the surgery, he had portions of the implant removed. [13] ¶¶ 19–21. But he still suffered from immobility, numbness, and debilitating pain. [13] ¶ 21.

Medtronic, Inc., Medtronic USA, Inc., and Medtronic Sofamor Danek USA, Inc. designed, manufactured, and distributed the rods and screws.[2] [13] ¶¶ 5, 7. Medtronic marketed that device to be safe, effective, and reliable for the purpose of treating medical conditions like the one affecting Griffin. [13] ¶ 7. Griffin alleges

---

[1] Bracketed numbers refer to entries on the district court docket. The operative complaint is [13].

[2] I refer to the defendant entities collectively as "Medtronic."

2

that the rods and screws failed to alleviate his symptoms and instead caused severe and irreparable physical damage. [13] ¶¶ 23–24.

Griffin filed a complaint in state court alleging claims of negligence, strict liability, and breach of express and implied warranties. [2]. Medtronic removed it to this court, *see* [1], and filed a motion to dismiss the complaint for failure to state a claim. [9]. Rather than responding to the motion, Griffin amended his complaint to include a few additional factual allegations. [13]. Medtronic then filed a motion to dismiss the amended complaint. [17]. Shortly thereafter, Griffin's counsel withdrew from representing him, and Griffin was given five weeks to respond to the motion. *See* [20]. He did not file a response by that deadline; he did not ask for an extension of time; and he has not obtained new counsel.

## III. Analysis

Medtronic argues that Griffin has effectively abandoned his lawsuit by failing to respond to the motion to dismiss, and that the complaint should be dismissed as a result. Where a Rule 12(b)(6) motion provides plausible reasons for dismissal, and the plaintiff fails to respond, dismissal is appropriate. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999).

### A. Personal Jurisdiction

Medtronic first argues that this court does not have personal jurisdiction over Medtronic, Inc. and Medtronic USA, Inc. It argues that the complaint does not allege facts sufficient to establish that those entities are subject to general

3

jurisdiction in Illinois. It also argues that the two entities are not subject to specific personal jurisdiction in Illinois because, contrary to the allegations in the complaint, the alleged injury did not arise from either of those defendants' in-state activities. Medtronic attaches to its motion the declaration of Medtronic officer Anne Ziebell, which states that Medtronic, Inc. and Medtronic USA, Inc. did not design, manufacture, label, or sell the medical device at issue. [17-1] ¶¶ 4, 6. "[A] complaint need not include facts alleging personal jurisdiction." *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998) (citing *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987)). "However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). And a court may consider certain outside materials, such as affidavits, in deciding a motion to dismiss for lack of personal jurisdiction. *See id.*

Medtronic's request for dismissal based on a lack of personal jurisdiction is denied. Medtronic is moving for dismissal under Rule 12(b)(6) for failure to state a claim, citing to that rule and the corresponding legal standard, not under Rule 12(b)(2) for lack of personal jurisdiction. More importantly, the request is denied because Medtronic did not make this argument in its motion to dismiss the original complaint. That motion was terminated as moot when Griffin filed the amended complaint, which named the same defendants and, as Medtronic itself points out, is nearly identical to the original complaint. Rule 12 provides that: "Except as

provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Further, "[a] party waives any defense listed in Rule 12(b)(2)-(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2). . . ." Fed. R. Civ. P. 12(h)(1); *see also* 5C Wright & Miler Fed. Prac. & Proc. Civ. § 1388 (3d ed. 2017) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading."). By failing to raise a personal-jurisdiction defense in its initial motion to dismiss, Medtronic waived that defense.

### B. Strict Liability (Design Defect and Manufacturing Defect)

To state a strict products liability claim based on a defectively designed or manufactured product, a plaintiff must allege "(1) a condition of the product as a result of manufacturing or design, (2) that made the product unreasonably dangerous, (3) and that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the condition." *Mikolajczyk v. Ford Motor Co.*, 231 Ill.2d 516, 543 (2008), *opinion modified on denial of reh'g* (Dec. 18, 2008). "A manufacturing defect occurs when one unit in a product line is defective, whereas a design defect occurs when the specific unit conforms to the intended design but the intended design itself renders the product unreasonably dangerous." *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill.App.3d 490, 497 (1st Dist. 2010) (citing *Blue v. Envtl. Eng'g, Inc.*, 215 Ill.2d 78,

5

89–90 (2005)). Medtronic argues that the claims based on a design defect or a manufacturing defect fail because the complaint does not adequately allege such a defect, or how a defect proximately caused Griffin's injury.

The complaint is indeed sparse on details. It alleges that the device's design was unreasonably dangerous, inadequate, and defective. The complaint also alleges that the device itself was improperly manufactured and contained defects and inherent imperfections. With respect to causation, the complaint alleges that the device's defective design and inherent imperfections caused it to fuse, crack, and fail, which in turn caused Griffin's physical injury. Medtronic argues that these allegations are conclusory and do not provide any factual details as to how the device's design was defective, how the device was manufactured in a way that deviated from its intended result, or how any alleged defects proximately caused Griffin's injury. As noted above, Griffin failed to respond to Medtronic's motion, forfeiting any responsive arguments. *See Alioto*, 651 F.3d at 721 & n.1. The complaint alleges that the implantation of the device failed to effectively treat Griffin's symptoms. It also alleges that Griffin was injured. But it does not allege facts that plausibly suggest that a condition of the device made it unreasonably dangerous and proximately caused Griffin's injury. Other than using the conclusory terms "dangerous," "defective," and "imperfect," the complaint is silent as to what was wrong with the device and fails to give notice of the claim. The strict liability claims based on defective design and defective manufacturing are dismissed.

### C. Strict Liability (Failure to Warn)

Griffin also brings a strict liability claim based on Medtronic's failure to warn Griffin and his doctors of the risk of adverse reactions or inefficacy of the device, and Medtronic's failure to instruct them on the proper use of the device. To state a strict products liability claim under a failure-to-warn theory, a plaintiff must show "that the manufacturer did not disclose an unreasonably dangerous condition or instruct on the proper use of the product as to which the average consumer would not be aware." *Salerno*, 402 Ill.App.3d at 499 (citing *Sollami v. Eaton*, 201 Ill.2d 1, 7 (2002)). "A manufacturer has a duty to warn where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning." *Id.* In medical device cases, Illinois employs the learned intermediary doctrine, under which manufacturers have a duty to warn physicians of a "device's dangerous propensities, and physicians, in turn, using their medical judgment, have a duty to convey any relevant warnings to their patients." *Hansen v. Baxter Healthcare Corp.*, 309 Ill.App.3d 869, 881 (1st Dist. 2002); *see also Kirk v. Michael Reese Hosp. & Med. Ctr.*, 117 Ill.2d 507, 517–18 (1987).

Medtronic argues that this claim must be dismissed because the complaint does not adequately allege that Medtronic owed Griffin or his doctors a duty to warn them, or that Medtronic breached such a duty. First, under the learned intermediary doctrine, Medtronic did not owe Griffin a duty to warn him of anything, so any claim based on a failure to warn Griffin is dismissed. Second, the

7

complaint does not adequately allege that Medtronic had a duty to warn Griffin's doctors, because "[i]n Illinois, there is no duty to warn of a risk that is already known by those to be warned." *Hansen*, 309 Ill.App.3d at 881 (quoting *Proctor v. Davis*, 291 Ill.App.3d 265, 277 (1st Dist. 1997)). According to Medtronic, the medical community is aware of the risks identified in the complaint. Medtronic cites to several cases and medical treatises that refer to the known risk that rods and screws implanted into vertebrae might not achieve their desired effect, and that they might instead break down within the body.[3] In addition, Medtronic points out that the complaint does not specifically allege what warnings were given, what Griffin's doctors knew of the device, or why the warnings were inadequate. The medical community is no doubt aware that there is some risk of injury associated with any surgical procedure, including the implantation or removal of a medical device, and the allegations of undisclosed warnings are too vague to establish that Medtronic failed to disclose anything to Griffin's doctors that they did not already know. The claim is dismissed because the complaint does not allege facts sufficient to show that Medtronic owed Griffin or his doctors a duty to warn them, or that Medtronic breached such a duty.

---

[3] Medtronic requests that I take judicial notice of the knowledge of these risks by the medical community at large. "A court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting Fed. R. Evid. 201(b)). Griffin does not object to Medtronic's request, but I take judicial notice only of the fact that every surgical procedure and the usage of any medical device entail some amount of risk, which is hardly disputable.

**D. Negligence**

The complaint also brings a negligence claim based on the same allegations supporting the strict liability claim and asserting the same theories of liability: a design defect, a manufacturing defect, and a failure to warn. To state a negligence claim based on a defective product, "a plaintiff must establish the existence of a duty of care owed by the defendant, a breach of that duty, an injury proximately caused by that breach, and damages." *Salerno*, 402 Ill.App.3d at 497 (quoting *Calles v. Scripto-Tokai Corp.*, 224 Ill.2d 247, 270 (2007)). "The key distinction between the two types of claims lies in the concept of fault. In a strict liability claim, the focus of the inquiry is on the condition of the product itself. A negligence claim accounts for a defendant's fault as well as the product's condition." *Salerno*, 402 Ill.App.3d at 497 (internal citations omitted).

That distinction does not, however, save Griffin's negligence claim from dismissal where the strict liability claim failed. The complaint alleges that Medtronic "breached its duty of care to Plaintiff in the manufacture, design, labeling, warnings, instructions, sale, marketing, and distribution" of the device. [13] ¶ 28. Without supporting factual allegations, that statement—a legal conclusion—is insufficient to plausibly suggest that Medtronic breached its duty of care to Griffin or that an alleged breach proximately caused Griffin's injury. As explained above, the complaint does not allege any facts to demonstrate how the device's design was defective, what kind of defect it acquired in the manufacturing process, how its defects proximately caused the injury, or how its warnings and

9

disclosures were inadequate. Further, the learned intermediary doctrine bars any claim based on a failure to warn Griffin himself. Thus, the negligence claim is dismissed.

### E. Breach of Express Warranty

"In a breach of express warranty action under the [Illinois UCC], plaintiff must show a breach of an affirmation of fact or promise that was made a part of the basis of the bargain." *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 372 Ill.App.3d 354, 360 (1st Dist. 2007) (quoting *Hasek v. DaimlerChrysler Corp.*, 319 Ill.App3d 780, 788 (1st Dist. 2001)). "Since express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the various parties." *Id.* Medtronic argues that the claim for breach of express warranty must be dismissed because the complaint does not allege with adequate specificity the terms of any affirmation of fact or promise, or how it became the basis of the bargain between the parties.

Medtronic again provides plausible reasons for dismissal. The complaint alleges that Medtronic expressly warranted that the product was "safe and fit for use by consumers, that it was of merchantable quality, that its side effects were minimal and comparable to other spinal fusion products, and that it was adequately tested and fit for its intended use." [13] ¶ 51. It also alleges that Griffin and his doctors reasonably relied on those warranties. [13] ¶ 53. These are conclusory allegations and are not accepted as true. They do not give notice to Medtronic of the claimed warranty. The complaint does not allege what affirmative representation

was made, how it was made, or when it was made. The complaint does not allege how the device was not comparable to other products or inadequately tested. And by failing to respond, Griffin effectively concedes that the allegations in the complaint do not plausibly suggest that Medtronic made any affirmative representations that became the basis of a bargain between the parties. Therefore, the claim is dismissed.

### F. Breach of Implied Warranties

The complaint alleges in a single count claims for breach of an implied warranty of fitness for a particular purpose and breach of the implied warranty of merchantability. Medtronic argues that the complaint fails to state a claim for breach of an implied warranty of fitness for a particular purpose, because it does not allege that Griffin used the device for any purpose other than its ordinary purpose. In the context of this implied warranty, a "particular purpose" differs from the ordinary purpose for which the goods are used. *See Comment 2*, 810 ILCS 5/2-315. The complaint alleges that the device was intended for the treatment of Griffin's condition, and that is the only use he put it to. Therefore, the complaint fails to state a claim for breach of an implied warranty of fitness for a particular purpose.

To state a claim for breach of the implied warranty of merchantability, a plaintiff must plead, among other things, that the goods sold were not merchantable at the time of sale (i.e. unfit for the ordinary purposes for which such goods are used). *See* 810 ILCS 5/2–314(2)(c). The complaint alleges that the device was

11

unreasonably dangerous, defective, and not suited for its intended purpose. Again, Medtronic correctly points out that, putting aside conclusory allegations like this one, the complaint does not provide notice of how the device was dangerous or defective. Griffin certainly believes that Medtronic's device caused him injury, but he has not presented factual allegations sufficient to "raise [his] right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, the claim is dismissed.

Medtronic requests that the complaint be dismissed with prejudice, and that request is granted. Griffin already amended his complaint once in response to an earlier motion to dismiss; he did not request leave to amend his complaint again; and there is no reason to suggest that he can cure any of the deficiencies identified by Medtronic. In addition, by failing to respond to the motion to dismiss, he "forfeited [his] right to continue litigating [his] claim." *Kirksey*, 168 F.3d at 1043. Thus, the complaint is dismissed with prejudice.

## IV. Conclusion

Medtronic's motion to dismiss, [17], is granted. Griffin's complaint is dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

 Manish S. Shah
 United States District Judge

Date: October 5, 2017